ERICH P. WISE (Bar No. 63219)
FLYNN, DELICH & WISE LLP
One World Trade Center, Suite 1800
Long Beach, CA 90831
Telephone:    (562) 435-2626
Telecopier:   (562) 437-7555
Email:        erichw@fdw-law.com

CONTE C. CICALA  (Bar No. 173554)
FLYNN, DELICH & WISE LLP
343 Sansome Street, Suite 540
San Francisco, CA  94104
Telephone:    (415) 693-5566
Telecopier:   (415) 693-0410
Email:        contec@fdw-law.com

Attorneys for Plaintiff
MITSUI O.S.K. LINES, LTD.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITSUI O.S.K. LINES, LTD. | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| SEAMASTER LOGISTICS, INC.; SUMMIT LOGISTICS INTERNATIONAL, INC.; and AMERICAN GLOBAL LOGISTICS LLC, | |
| Defendants. | |

Plaintiff MITSUI O.S.K. LINES, LTD. ("MOL") alleges, on information and belief, as follows:

## JURISDICTION

1.     This is a suit arising out of trucking charges fraudulently assessed to an ocean carrier engaged in transportation of cargo pursuant to ocean bills of lading, tariffs and/or service

-1-

Case No.:

contracts and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1). In the alternative, it presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 *et seq.* Alternatively, subject matter jurisdiction is present pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and complete diversity of citizenship between the parties is present, as follows.

## INTRADISTRICT ASSIGNMENT

2. This District includes the Port of Oakland where MOL transports cargo by ocean vessel. Moreover, some of the shipments at issue in this case transited the Port of Oakland. This action is therefore properly assigned to the San Francisco or Oakland Division of this Court.

## THE PARTIES

3. Plaintiff MOL is now and at all times material herein was a corporation duly organized and existing under the laws of Japan. MOL at relevant times had and now has its principal place of business and headquarters in Tokyo. Plaintiff was, and still is, an ocean carrier and common carrier of goods for hire between United States ports and foreign ports, and properly published tariffs and/or filed service contracts for the transportation of goods of the type and between the ports or areas as hereinafter alleged.

4. Defendant SEAMASTER LOGISTICS, INC. ("Seamaster") is, on information and belief, a corporation organized under the laws of the state of California, and is an FMC[1]-registered Non Vessel Operating Common Carrier ("NVOCC").

5. Defendant SUMMIT LOGISTICS INTERNATIONAL, INC. ("Summit") is, on information and belief, a corporation organized and existing under the laws of one of the states

---

[1] Federal Maritime Commission

Case No.:

-2-

of the United States, with a principal place of business at 800 Federal Boulevard, Carteret, New Jersey 07008. Summit is an FMC-registered NVOCC and, on information and belief, is a d/b/a and/or agent and/or affiliated company of SEAMASTER and is also controlled by and/or is in shared control with and/or acts in concert with SEAMASTER.

6. Defendant American Global Logistics LLC ("AGL") is on information and belief, a corporation and/or a limited liability company organized and existing under the laws of the state of Georgia, having a principal place of business at 53 Perimeter Center East, Suite 450, Atlanta, Georgia 30346. AGL also holds itself out as American Global Logistics Inc., and is now acting at all times relevant acted as an NVOCC. On information and belief, it is controlled by Chad Rosenberg.

7. Each of the defendants was, at all times relevant, the agent, employee, joint venturer, co-loader, and/or co-conspirator of the others and acting in the course and scope of the agency relationship, employment, joint venture, co-load relationship, and/or co-conspiracy in performing the acts alleged, and each defendant has ratified and approved the acts of its agent(s).

## GENERAL ALLEGATIONS

8. Like other ocean carriers, MOL transports shipments of cargo on both a "port-to-port" and "door-to-door" basis, or in combinations thereof. In the former instance, MOL's responsibility is simply to transport the cargo from one port to another. In the latter, in addition to the actual ocean move from port to port, MOL may assume responsibility to make arrangements and pay for inland moves to the port of loading and/or from the port of discharge. Ocean transportation that includes inland transportation to and/or from a door location is also referred to, *inter alia*, as "through carriage" or "through transport."

Case No.:

9. Among MOL's customers are NVOCCs, which are sometimes called "paper carriers" because, as to the actual cargo interests, they have the same responsibility as a vessel operating common carriers ("VOCCs"), but do not themselves operate ships. With respect to actual VOCCs such as MOL, NVOCCs act as a shipper or customer of services.

10. Seamaster, Summit and AGL were MOL's NVOCC customers that, either together or separately, routinely and at all times relevant booked and/or arranged to be booked shipments with MOL for "door" pick-up of cargo to be carried to the United States from "Shenzhen," an area within Guangdong Province in South China. With respect to each shipment so booked, MOL was required by its contracts with Seamaster and Summit to pay the cost of trucking the shipments from the places of origin – thought to be a factory or warehouse – to the ports of loading. AGL was a regular consignee of many such shipments.

11. On September 1, 2009, an employee of MOL's agent in Hong Kong, MOL (HK) Agency, entered into a written contract with a company called Summit International Logistics Ltd. ("Summit International"), whereby Summit International was to arrange for truck services in Shenzhen. On information and belief, this written contract simply memorialized an arrangement that had already been in place for years. Summit's signature on the agreement was that of Mr. Jerry Huang, who at the time, and today, was and remains a corporate officer of SEAMASTER. As a result of this arrangement, whenever Summit, Seamaster and/or AGL represented to MOL that they had shipments that had to be picked up in Shenzhen, MOL was billed and paid for Shenzhen truck services that were said to have been arranged on MOL's behalf.

12. In auditing shipments booked by or on behalf of Summit, AGL and SEAMASTER for carriage from Shenzen to the United States, MOL has discovered that the contracts of carriage entered into by Summit, Seamaster and AGL with their cargo interests

provided for the receipt of cargo directly at the ports of loading in China. Thus, the customers of Summit, Seamaster and/or AGL had to arrange and pay for all origin truck services. No truck services were actually provided on MOL's behalf, and the shipments were delivered directly to the ports of loading by truck at no cost to Summit, Seamaster and/or AGL.

13. Defendant NVOCCs received thousands of such shipments at the port, yet booked those same shipments with MOL for "door" pick-up services that were either unnecessary or never occurred. The defendant NVOCCs knew or should have known that their actions would and in fact did induce and cause MOL to pay for truck services which were not necessary and/or were not rendered. On information and belief, the defendants hereto acted in concert and/or aided and abetted one another as part of an overall scheme to defraud and deceive MOL and serve their own financial interests at MOL's expense.

14. As a consequence of the foregoing, MOL has been damaged according to proof, in an amount in excess of $3,000,000.00.

15. MOL has also incurred additional expenses and costs relating to these shipments, and will continue to do so, including auditing expenses and attorney fees and costs incurred in this action in collection of these costs, all of which are according to proof, but in any event in excess of the jurisdictional minimums, if any, of this Court.

## FIRST CLAIM FOR RELIEF
## INTENTIONAL MISREPRESENTATION

16. MOL incorporates by reference paragraphs 1 to 15.

17. By booking shipments for nonexistent door moves, defendants, and each of them, falsely represented to MOL that such moves were in fact required and provided. Each booking which called for such a move, and each invoice or other charging document for nonexistent truck moves, was false when made.

-5-

Case No.:

18. The foregoing false representations were made over the course of years by various agents, employees, joint venturers, co-loaders, and/or co-conspirators of defendants. In reliance thereon, MOL repeatedly paid trucking companies for services which were neither necessary nor provided.

19. The foregoing conduct was intentional and willful, and despicable.

20. MOL has been damaged thereby, according to proof.

## SECOND CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION

21. MOL incorporates by reference paragraphs 1 to 20.

22. By booking shipments for nonexistent door moves, defendants, and each of them, negligently represented to MOL that such moves were in fact required and provided. Each booking which called for such a move, and each invoice or other charging document for nonexistent truck moves, was false when made.

23. The foregoing false representations were made over the course of years by various agents, employees, joint venturers, co-loaders, and/or co-conspirators of defendants. In reliance thereon, MOL repeatedly paid trucking companies for services which were neither necessary nor provided.

24. MOL has been damaged thereby, according to proof.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff MOL prays judgment as follows:

1. For an amount according to proof in excess of $3,000,000.00 and interest thereon at the legal rate;

2. For punitive damages in an amount sufficient to punish defendants for their wrongful conduct.

3. For all costs of suit, attorney fees and other expenses herein incurred;

-6-

Case No.:

4. For such and other relief as the Court may deem proper.

DATED: June 6, 2011

FLYNN, DELICH & WISE LLP

By: _____
Erich P. Wise
Conte C. Cicala
Attorneys for Plaintiff
MITSUI O.S.K. LINES, LTD.

FLYNN, DELICH & WISE LLP
ATTORNEYS AT LAW
343 SANSOME STREET, SUITE 540
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-5566

Case No.: