UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| MITSUI O.S.K. LINES, LTD., | No. C 11-02861 MEJ |
| Plaintiff, | **ORDER RE DEFENDANT AMERICAN GLOBAL LOGISTICS, LLC'S MOTION TO DISMISS** |
| v. | |
| SEAMASTER LOGISTICS, INC. ET AL, | |
| Defendant(s). | [Docket No. 18] |
| _____/ | |

## I. INTRODUCTION

Pending before the Court is Defendant American Global Logistics, LLC's ("AGL") Motion to Dismiss Plaintiff Mitsui O.S.K. Lines, LTD's ("MOL") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 18. MOL has filed an Opposition (Dkt. No. 35), to which AGL filed a Reply (Dkt. No. 36). Defendants Seamaster Logistics, Inc. ("Seamaster"), and Summit Logistics International, Inc. ("Summit") join in AGL's Motion. Dkt. No. 34. The Court finds this matter suitable for disposition without oral argument and therefore **VACATES** the hearing set for October 20, 2011. *See* Civil L. R. 7-1(b). After carefully considering the parties' arguments and controlling legal authorities, the Court **GRANTS** AGL's Motion and concurrently **GRANTS** MOL leave to file an amended complaint.

## II. BACKGROUND

On June 21, 2011, MOL filed its Complaint against Defendants AGL, Seamaster and Summit. Compl., Dkt. No. 1. The relevant allegations, taken from MOL's Complaint are as follows.

MOL is an ocean carrier and common carrier of goods for hire between the United States and foreign ports, including the Port of Oakland. *Id*. ¶¶ 2, 3. MOL transports cargo shipments on both a "port-to-port" and "door-to-door" basis. *Id*. ¶ 8. For "port-to-port" shipments, MOL's responsibility is only to transport the cargo from one port to another. *Id*. ¶ 8. For "door-to-door" shipments, in

UNITED STATES DISTRICT COURT
For the Northern District of California

1   addition to the ocean move from one port to another, MOL may assume responsibility to make

2   arrangements and pay for inland moves to the port of loading and/or from the port of discharge.  *Id*.

3   "Through carriage" or "through transport" is ocean transportation that includes inland transportation

4   to and/or from a door location.  *Id*.

5         Among MOL's customers are Non Vessel Operating Common Carriers ("NVOCC").  *Id*. ¶ 9.

6   AGL, Seamaster, and Summit are NVOCCs and MOL's customers that have booked and/or arranged

7   to be booked shipments with MOL for "door" pick-up of cargo to be carried to the United States from

8   Shenzhen, located in the Guangdong Province in south China.  *Id*. ¶¶ 4-6, 10.  MOL alleges that, as to

9   each shipment booked for door pick-up, it was required by its contracts with Seamaster and Summit

10  to pay the cost of trucking the shipments from the places of origin – thought to be a factory or

11  warehouse – to the ports of loading, and that AGL "was a regular consigneee of many such

12  shipments."  *Id*.

13        MOL avers that "[o]n September 1, 2009, an employee of MOL's agent in Hong Kong, MOL

14  (HK) Agency, entered into a written contract with Summit International Logistics Ltd. ("Summit

15  International"), whereby Summit International was to arrange for truck services in Shenzhen."[1]  *Id*. ¶

16  11.  According to MOL, the written contract simply memorialized an arrangement that had already

17  been in place for years.  *Id*.  MOL alleges that, "[a]s a result of this arrangement, whenever Summit,

18  Seamaster and/or AGL represented to MOL that they had shipments that had to be picked up in

19  Shenzhen, MOL was billed and paid for Shenzhen truck services that were said to have been arranged

20  on MOL's behalf."  *Id*.

21        At some point thereafter, while auditing shipments booked by or on behalf of Summit, AGL,

22  and Seamaster for carriage from Shenzhen to the U.S., MOL discovered that the contracts of carriage

23  entered into by Summit, Seamaster, and AGL with their cargo interests provided for the receipt of

24  cargo directly at the ports of loading in China.  *Id*. ¶ 12.  The customers of Summit, Seamaster, and/or

25  AGL therefore had to arrange and pay for all origin truck services and the shipments were delivered

26

27  ─────────────────

28      [1]  The contract was signed by Jerry Huang, who is a corporate officer of Seamaster.  *Id*.

1    directly to the ports of loading by truck at no cost to Summit, Seamaster, and/or AGL. *Id*. As a

2    result, MOL alleges that no truck services were actually provided on its behalf. *Id*.

3        According to MOL, "Defendant NVOCCs received thousands of such shipments at the port,

4    yet booked those same shipments with MOL for 'door' pick-up services that were either unnecessary

5    or never occurred." *Id*. ¶ 13. MOL charges that Summit, Seamaster, and AGL knew or should have

6    known that their actions would, and in fact did, induce and cause MOL to pay for truck services that

7    were unnecessary or never occurred, resulting in over $3 million in damages to MOL. *Id*. ¶¶ 13, 14.

8    In so doing, MOL alleges that AGL, Summit, and Seamaster "acted in concert and/or aided and

9    abetted one another as part of an overall scheme to defraud and deceive MOL and serve their own

10    financial interests at MOL's expense." *Id*. ¶ 13.

11        Based on the foregoing allegations, MOL asserts claims for (1) intentional misrepresentation

12    and (2) negligent misrepresentation. *Id*. at 5-6.

13        AGL now moves to dismiss MOL's Complaint on the ground that MOL has failed to

14    sufficiently plead facts in support of its theory that AGL fraudulently conspired with the other

15    Defendants, making dismissal proper under Rule 12(b)(6) and Rule 9(b).

16                 **III. DISCUSSION**

17        In its Motion, AGL contends that MOL has failed to plead sufficient facts to hold it liable on a

18    fraudulent conspiracy theory and, as a result, has failed to state plausible claims against it under

19    12(b)(6).

20        As indicated above, MOL is alleging that AGL, together with the other Defendants, had a

21    fraudulent "arrangement," whereby they billed MOL for inland shipping in Shenzhen that was

22    actually paid for by other customers. *See* Compl. ¶ 11. Because the core of MOL's lawsuit sounds in

23    fraud, Rule 9(b)'s pleading requirements apply. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

24    1103-04 (9th Cir. 2003) (in cases where a plaintiff alleges a unified course of fraudulent conduct and

25    rely entirely on that course of conduct as the basis of a claim, the claim is said to be "grounded in

26    fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity

27    requirement of Rule 9(b)).

28

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy this heightened pleading standard, a complaint alleging fraud must state the time, place, and specific content of misrepresentations, as well as the misrepresenting parties. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). In this way, "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). Rule 9(b)'s requirements apply not only to fraud claims, but also to claims that rely entirely on a fraudulent course of conduct. *Id.* at 1125.

Likewise, "[w]here a plaintiff alleges a conspiracy to commit fraud, Rule 9(b) requires more than conclusory allegations of the conspiracy." *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1020 (D. Ariz. 2001); *see also Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1406 n. 3 (N.D. Cal. 1992). Allegations of conspiracy must be accompanied by "the who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba—Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations and quotation marks omitted). This does not mean, however, that a plaintiff alleging a fraudulent scheme by multiple defendants must plead each of these elements as to each defendant. As the Ninth Circuit explained:

> [T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant. "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Beltz Travel Service, Inc. v. Int'l Air Tranport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980). On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998) (citation, quotation omitted). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

*Swartz v. KPMG LLC*, 476 F.3d 756, 764-65 (9th Cir. 2007).

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Here, AGL asserts that the Complaint contains no allegations of misrepresentations or

2    omissions by AGL and fails to set forth any specific facts regarding the conspiracy or "arrangement"

3    in which AGL allegedly joined and participated.  Mot. at 6.  Rather, AGL argues that MOL merely

4    lumped all Defendants together and alleged in a conclusory manner that they conspired with each

5    other and acted as each other's agents to commit the purported fraud.  *Id*.  AGL thus contends that the

6    allegations fail to state a claim that is plausible on its face and are wholly insufficient to state a claim

7    against AGL under Rule 9(b).  *Id*.

8    MOL, however, maintains that it has alleged sufficient facts regarding AGL and its role in the

9    fraudulent scheme to satisfy Rule 9(b) and to defeat AGL's 12(b)(6) challenge.  Opp'n at 2-8.  With

10   respect to MOL's allegation that AGL participated in a fraudulently scheme to induce MOL to pay

11   for inland truck shipping that was not necessary or performed, MOL cites to paragraphs 7, 10, 11, 12,

12   and 13 of its Complaint.  *Id*. at 5-6.  Reviewing these paragraphs, the Court agrees with AGL that the

13   allegations fall short of Rule 9(b)'s pleading standard.  Notably, while MOL cites generally to these

14   excerpts from its Complaint, it fails to pinpoint any averments in the paragraphs alleging how AGL

15   conspired with either of the other Defendants to overcharge MOL for inland shipping or how AGL

16   perpetuated the fraudulent scheme.  Rather, as AGL correctly notes, MOL merely alleges that: (1)

17   AGL was a co-conspirator (Compl. ¶ 7); (2) AGL "was a regular consignee of many such shipments"

18   (Compl. ¶ 10); and (3) AGL "acted in concert and/or aided and abetted" the other Defendants "as part

19   of an overall scheme to defraud and deceive MOL," (Compl. ¶ 13).  Such conclusory statements are

20   insufficient under Rule 9(b).

21   AGL also contends that MOL has failed to allege the circumstances giving rise to the

22   fraudulent arrangement, *.i.e.*, the "who, what, when; where, and how."  Based on the Court's reading

23   of the Complaint, it is unclear whether MOL is alleging that AGL independently made fraudulent

24   misrepresentations or was only involved in perpetuating another Defendant's fraudulent scheme.  To

25   the extent that MOL is asserting that each Defendant, individually, made fraudulent statements

26   regarding the inland shipping costs, MOL must plead facts as to each of those elements for each

27   Defendant.  However, as explained above, to the extent that MOL is asserting a fraudulent scheme in

28

5

1   which all Defendants participated, MOL must specifically allege each Defendant's role in the

2   scheme, even if the Defendant did not make the initial fraudulent statement.  *See Swartz*, 476 F.3d at

3   764-65; *see also See In re Equity Funding Corp. of Am. Secs. Litig.*, 416 F. Supp. 161, 181 (C.D. Cal.

4   1976).  As it now stands, the only representation identified in the Complaint concerns the September

5   2009 contract executed by MOL's Hong Kong agent and Summit International.[2]  *See* Compl. ¶ 11.

6   While MOL alleges that the contract "simply memorialized an arrangement that had already been in

7   place for years" (*Id.* ¶ 11), and argues in its Opposition that the "arrangement" that forms the basis of

8   its claims is broader than just the contract, MOL's Complaint is devoid of allegations concerning this

9   arrangement.  Simply asserting that an arrangement existed because MOL discovered common

10  practices among the Defendants is insufficient to hold AGL liable on a conspiracy to defraud theory.

11  *See Twombly*, 550 U.S. at 565 & fn. 10 (allegations of defendants' parallel conduct alone did not

12  establish "plausible" claim of conspiracy).

13          Finally, the fact that MOL asserted claims for intentional and negligent misrepresentation do

14  not allow it to get around these pleading deficiencies.  Because MOL has not alleged any specific

15  conduct by AGL or sufficient facts to support a conspiracy to defraud theory, there is no basis to

16  support either claim against AGL.  Furthermore, to the extent that MOL's misrepresentation claims

17  are premised on fraudulent conduct, they are subject to Rule 9(b) and must be pled with particularity.

18  *See Vess*, 317 F.3d at 1103-04; *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at * 12

19  (N.D. Cal. June 5, 2009).

20          In sum, the Court finds that MOL has failed to set forth sufficient allegations regarding the

21  fraudulent scheme that forms the basis of its claims against AGL and the other Defendants.

22  Dismissal pursuant to Rule 9(b) and 12(b)(6) is therefore appropriate.  AGL requests that the Court

23  dismiss MOL's Complaint with prejudice.  However, because MOL may remedy these pleading

24  deficiencies, the Court will grant MOL leave to file an amended complaint.

25

26          [2]  MOL has not alleged how any of the Defendants, including AGL, are connected to Summit

27  International.  Thus, it is unclear from the face of the Complaint how any of the Defendants can be
    liable for representations made in the September 2009 contract.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

### IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** AGL's Motion to Dismiss MOL's Complaint with leave to amend.  MOL shall file its Amended Complaint no later than November 10, 2011.

**IT IS SO ORDERED.**

Dated: October 19, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge

7