**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITSUI O.S.K. LINES, LTD., | ) Case Nos. 10-cv-5591-SC |
| | )              11-cv-2861-SC |
| Plaintiff, | ) |
| | ) ORDER RE: MOTION FOR |
| v. | ) <u>PARTIAL SUMMARY JUDGMENT</u> |
| | ) |
| SEAMASTER LOGISTICS, INC., SUMMIT | ) |
| LOGISTICS INTERNATIONAL, INC., | ) |
| AMERICAN GLOBAL LOGISTICS, LLC, | ) |
| KESCO CONTAINER LINE, INC., KESCO | ) |
| SHIPPING, INC., and DOES 1 through | ) |
| 20, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## I.   <u>INTRODUCTION</u>

Now pending before the Court is the motion of Defendant American Global Logistics, LLC ("Defendant" or "AGL") for partial summary judgment against Plaintiff Mitsui O.S.K. Lines, Ltd. ("Plaintiff" or "MOL").  ECF No. 123 ("Mot.").[1]  The motion is fully briefed and, pursuant to Civil Local Rule 7-1(b), suitable for decision without oral argument.  ECF Nos. 133 ("Opp'n"), 144 ("Reply").  As set forth below, AGL's motion is GRANTED IN PART and DENIED IN PART.

---

[1] On December 7, 2012, the Court consolidated Case Nos. 10-cv-5591-SC and 11-cv-2861-SC for trial.  This Order cites to the latter case's docket.

**United States District Court**
For the Northern District of California

## II. **BACKGROUND**

The following background facts are undisputed. The Shipping Act of 1984, 46 U.S.C. §§ 40101 et seq. ("Shipping Act"), regulates both vessel-operating common carriers ("VOCC") and non-vessel-operating common carriers ("NVOCC"). VOCCs operate ships that carry cargo over water between the United States and foreign countries for pay. See 46 U.S.C. §§ 40102(6), (17). NVOCCs hold themselves out as common carriers but do not themselves operate vessels; they use VOCCs to carry cargo over water and hence are shippers in their relationships to VOCCs. See id. § 40102(16). VOCCs and NVOCCs may enter into service contracts whereby the NVOCC, as shipper, commits to shipping a certain amount of cargo over a period of time and the VOCC, as carrier, commits to giving the shipper a certain rate and service level. See id. § 40102(20). NVOCCs can also enter into service-contract-style arrangements between themselves. See 46 C.F.R. §§ 531.1 et seq.

In addition to ocean shipping, both VOCCs and NVOCCs sometimes contract to carry cargo overland. Carriage by truck or other means either to or from a port -- that is, for the non-ocean portion of the carriage -- is referred to as "inland carriage" or "drayage." Carriage that includes both an inland and an ocean move is called "through carriage" or "through transport." See 46 U.S.C. § 40102(25). Because VOCCs and NVOCCs can carry cargo over both land and water, they may offer carriage from port to port, from "door to door" (that is, from a shipment's inland point of origin to its inland destination), or in combinations thereof.

Plaintiff MOL is a VOCC. All the named Defendants are NVOCCs. The claims and allegations pertinent to the motion at bar relate to

**United States District Court**
For the Northern District of California

1  shipments MOL undertook from southern China to the United States on

2  behalf of AGL, as well as Defendants SeaMaster Logistics, Inc.

3  ("SeaMaster") and Summit Logistics International, Inc. ("Summit").

4  <u>See generally</u> SAC ¶¶ 20-44.[2]  MOL alleges that Defendants,

5  individually and in conspiracy with each other, misrepresented the

6  points of origin and/or delivery for thousands of shipments, that

7  MOL was obliged to pay for the inland carriage for these shipments,

8  and that the inaccurate representations caused MOL to overpay for

9  trucking moves that either never occurred or were shorter than

10  represented.  <u>See id.</u> ¶¶ 24-25.

11      MOL alleges wrongdoing in both China and the United States.

12  In China, numerous shipments allegedly were represented to have

13  originated in Shenzhen when they actually originated, for

14  contractual purposes, at the port of egress.[3]  <u>Id.</u> ¶ 24.  The

15  parties refer to this as the "Shenzhen trucking" scheme or

16  arrangement, as will the Court.  In the United States, numerous

17  shipments allegedly were represented to require delivery further

18  away than the actual delivery address.  <u>Id.</u> ¶ 25.  MOL alleges that

19  AGL used a company called Expedited to make these deliveries.  <u>Id.</u>

20  ¶ 27.  AGL denies wrongdoing.

21      It is undisputed that, for at least 600 of the challenged

22  shipments, AGL was the consignee or "notify party," while SeaMaster

23

24  ───────────────────────

[2] On December 7, 2012, the Court denied MOL's motion to file a
25  Third Amended Complaint.  ECF No. 160.  Hence, Plaintiff's
operative pleading is the Second Amended Complaint.  ECF No. 72
26  ("SAC").  The SAC names additional defendants and asserts other
claims against non-AGL parties, but those claims and allegations do
27  not bear on AGL's motion.

28  [3] The parties sometimes refer to a port as the "container yard" or
"CY."

**United States District Court**
For the Northern District of California

1   was the shipper with respect to MOL.  Minck Decl. ¶ 5.[4]  For these

2   shipments, a U.S. buyer would hire AGL to move goods (for example,

3   furniture) from their place of manufacture in China to the buyer's

4   facility in the United States.  See Briles Dep. 23:10-23.  AGL, in

5   turn, had a Sales Agency and Destination Agent Agreement with

6   SeaMaster, under which AGL, as "sales" or "destination agent,"

7   would secure shipments for SeaMaster and SeaMaster would arrange

8   carriage for those shipments from China to the United States under

9   its (that is, SeaMaster's) service contract with MOL or another

10  VOCC.  See Briles Dep. 30:2-4; Rosenberg Dep. 65:10-16; Pl.'s Ex.

11  143 (Sales Agency and Destination Agent Agreement ("Agr.")).

12  SeaMaster and AGL's Agreement identifies SeaMaster as the principal

13  in their relationship, see Agr., but the parties sometimes refer to

14  SeaMaster as the "overseas agent," see, e.g., Briles Dep. 44:13-24,

15  apparently in contrast to AGL's role as destination (that is,

16  domestic) agent.  Nearly all of AGL's customers -- 99 percent --

17  ordered "FOB port" service, meaning that the Chinese seller was

18  responsible for delivery of the goods to the Chinese port, and

19  AGL's customer (hence, AGL) only took possession of the goods once

20  they were loaded on the ship in China.  See Briles Dep. 23:10-11;

21  Rosenberg Dep. 32:12-14.

22  _____

23  [4] Warrin Minck (a senior internal auditor for MOL's American
    division), Benjamin I. Fink (counsel for AGL), and Conte C. Cicala

24  (counsel for MOL) submitted declarations in connection with the
    motion at bar.  ECF Nos. 123-1 ("Fink Decl."), 134 ("Minck Decl."),

25  135 ("Cicala Decl.").  Among other materials, Fink and Cicala both
    included excerpts of transcripts of the depositions of Chad

26  Rosenberg (AGL's chief executive officer) and James Joseph Briles
    III (AGL's chief operating officer).  Fink Decl. Ex. A-1, Cicala

27  Decl. Ex. B ("Rosenberg Dep."); Fink Decl. Ex. A-2, Cicala Decl.
    Ex. A ("Briles Dep.").  Cicala included as part of the Rosenberg

28  Deposition excerpt various exhibits referenced in that deposition,
    labeled as "Plaintiff's Exhibits."

**United States District Court**
For the Northern District of California

AGL's booking of a shipment under the foregoing arrangement
would commence when the Chinese seller notified SeaMaster -- not
AGL -- that goods ordered by AGL's customer, the U.S. buyer, were
ready for shipment.  See Briles Dep. 44:13-45:20.  Every day,
SeaMaster's offices in China would prepare and send to AGL via
email a spreadsheet showing new bookings, called the "daily routing
guide."  Id.  The daily routing guide contained information
pertaining to the shipment's contents, destination, and port of
departure, as well as a recommended routing method and, usually,
applicable rates.  Id. 43:15-18, 44:13-24, 46:11-47:7.  However,
with one exception not relevant here, it did not contain
information about the shipment's inland point of origin, i.e., the
location of the Chinese manufacturer.  Id. 47:8-20, 65:20-66:-8.

Inland origin information was contained, however, in bills of
lading for the shipments.  Two sets of bills of lading were created
for each shipment.  As VOCC, MOL issued a "master" bill of lading
which would be provided to MOL's customers, the NVOCCs -- that is,
SeaMaster and AGL.  See Rosenberg Dep. 102:3-103:5.  SeaMaster
issued a "house" bill of lading which MOL would not receive.  See
id.; Minck Decl. ¶ 8.  Both sets of bills of lading refer to the
shipment's point of origin as the "place of receipt" and the
shipment's final destination as the "place of delivery."  E.g.,
Pl.'s Ex. 145.  For the shipments involved in the alleged Shenzhen
trucking arrangement, the master bill of lading would indicate a
place of receipt of "Shenzhen - Door," while the house bill of
lading would show the place of receipt to be the Chinese port (for
instance, Yantian).  See Briles Dep. 67:1-7, 68:16-69:17; Rosenberg
Dep. 102:3-103:5; see also, e.g., Pl.'s Exs. 145-48 (examples of

MOL's master and SeaMaster's house bills of lading).  As stated above, MOL declares that its records list AGL as consignee on at least 600 such shipments.  Minck Decl. ¶ 5.  AGL received copies of both sets of bills of lading by Federal Express or a similar delivery service.  Briles Dep. 53:11-54:4.

The SAC asserts the following five claims against AGL (as well as SeaMaster and Summit): (1) intentional misrepresentation and (2) conspiracy to intentionally misrepresent, or, in the alternative, (3) negligent misrepresentation; and civil RICO violations under (4) 18 U.S.C. § 1962(c) and (5) 18 U.S.C. § 1962(d).  AGL's motion for partial summary judgment seeks judgment in its favor on three different grounds.  First, AGL seeks dismissal of all claims to the extent they are premised on AGL's alleged misrepresentations made in the course of the alleged Shenzhen trucking scheme.  Second, AGL seeks dismissal of all claims premised on AGL's alleged participation in a conspiracy.  Third, AGL seeks dismissal of Plaintiff's RICO claims.  See Mot. at 3.  AGL does not move for summary judgment with respect to allegedly misrouted U.S. inland carriage.

## III. **LEGAL STANDARD**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be granted if the evidence would require a directed verdict for the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  "A moving party without the ultimate burden of persuasion at trial -- usually, but

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    not always, a defendant -- has both the initial burden of

2    production and the ultimate burden of persuasion on a motion for

3    summary judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

4    Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to

5    carry its burden of production, the moving party must either

6    produce evidence negating an essential element of the nonmoving

7    party's claim or defense or show that the nonmoving party does not

8    have enough evidence of an essential element to carry its ultimate

9    burden of persuasion at trial."  Id.  "In order to carry its

10   ultimate burden of persuasion on the motion, the moving party must

11   persuade the court that there is no genuine issue of material

12   fact."  Id.  Summary judgment, however, is inappropriate "for

13   resolving claims that depend on credibility determinations."  Earp

14   v. Ornoski, 431 F.3d 1158, 1170 (9th Cir. 2005).

15

16   **IV.   DISCUSSION**

17        **A.   Misrepresentation**

18             **1.   Intentional Misrepresentation**

19        Under California law,[5] the elements of intentional

20   misrepresentation (that is, fraud) are: "(1) a misrepresentation

21   (false representation, concealment, or nondisclosure); (2)

22   knowledge of falsity (or scienter); (3) intent to defraud, i.e., to

23   induce reliance; (4) justifiable reliance; and (5) resulting

24   damage."  Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th

25   _____

26   [5] AGL acknowledges in a footnote that the parties have not briefed
     choice-of-law issues.  Mot. at 11 n.7.  Both sides then proceed to
27   argue MOL's non-federal claims using California law without further
     discussion of choice of law.  The parties have thus acquiesced to
28   the application of California law for the non-federal claims.  See
     Hatfield v. Halifax PLC, 564 F.3d 1177, 1184 (9th Cir. 2009).

**United States District Court**
For the Northern District of California

979, 990 (Cal. 2004) (quoting <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 638 (Cal. 1996)).

AGL argues that there is no evidence that it ever made false representations to MOL about inland trucking movements, concealed any facts about them, or even knew about such movements, and that therefore MOL cannot prove the element of scienter.  AGL emphasizes the testimony of its executives Rosenberg and Briles, both of whom claim to have learned of the Shenzhen trucking arrangement only when this lawsuit was filed.  Rosenberg Dep. 50:1-8, 104:4-7; Briles Dep. 67:14-19.  AGL also offers the declaration of Jerry Huang, a SeaMaster executive, who asserts that he never discussed the Shenzhen trucking arrangement with anyone at AGL and that he "ha[s] no information that AGL learned of the [a]rrangement through AGL's business relationship with SeaMaster."  Huang Decl. ¶¶ 3-4.  AGL also points to Rosenberg and Briles's testimony to the effect that no one at AGL noticed the discrepancy between the master and house bills of lading or that MOL's master bill of lading stated the place of receipt to be an inland "door" rather than, as one would expect for FOB port service, the outgoing port.  Rosenberg Dep. 102:11-103:5, 103:17-104:3; Briles Dep. 67:1-12.[6]

The Court concludes that it cannot enter summary judgment for AGL on the basis of the denials of Briles, Huang, and Rosenberg

---

[6] AGL also emphasizes deposition testimony by MOL's chief executive officer, Masaru Satose.  Fink Decl. Ex. C ("Satose Dep.").  AGL characterizes Satose as having "confirmed" that AGL was unaware of the Shenzhen trucking arrangement.  Mot. at 8.  Satose's testimony, however, merely evinces Satose's unfamiliarity with AGL.  <u>See</u> Satose Dep. 170:4-7 (Satose stating "No" when asked if he <u>is</u> "familiar with AGL" or "know[s] anything about AGL").  As Satose concedes, he did not know whether AGL participated in trucking movements in China.  <u>Id.</u> 172:16-19.  That hardly "confirms" AGL's lack of participation.  Satose's testimony neither implicates nor exonerates AGL.

United States District Court
For the Northern District of California

because doing so would require the Court to make a determination of their credibility. "[S]ummary judgment is singularly inappropriate where credibility is at issue." S.E.C. v. M & A W., Inc., 538 F.3d 1043, 1055 (9th Cir. 2008) (quoting S.E.C. v. Koracorp Indus., Inc., 575 F.2d 692, 699 (9th Cir. 1978)). Such issues are appropriately resolved only after a trial or evidentiary hearing. Id. Here, the Court has no reason to doubt the credibility of Briles, Huang, or Rosenberg, but neither has the Court had an opportunity to examine them and gauge their veracity.

AGL also argues that it is entitled to summary judgment on MOL's fraud claim because AGL never made any affirmative representation to MOL regarding the place of receipt for shipments implicated in the Shenzhen trucking arrangement; thus, AGL argues, MOL cannot establish the element of misrepresentation. MOL indicates, however, that it rests its fraud claim on a theory of nondisclosure and concealment, specifically, AGL's nondisclosure and alleged concealment of the discrepancy in the two sets of bills of lading. Opp'n at 8-9.

Ordinarily, nondisclosures are not actionable under California law unless a confidential or fiduciary relationship between the parties gives rise to an affirmative duty to disclose. See Goodman v. Kennedy, 18 Cal. 3d 335, 346-47 (Cal. 1976); 5 Witkin, Summary 10th (2005) Torts § 794. However, even in the absence of such a relationship, a duty to disclose can arise "when the defendant ha[s] exclusive knowledge of material facts not known to the plaintiff" or "when the defendant actively conceals a material fact from the plaintiff." Jones v. ConocoPhillips, 198 Cal. App. 4th 1187, 1199 (2011), review denied (Nov. 30, 2011) (alteration in

original) (internal quotation marks omitted).  Neither party
disputes that AGL had both sets of bills of lading, that MOL had
only one, and that AGL did not affirmatively notify MOL of the
discrepancy between the two.  MOL frames this nondisclosure as an
act of concealment or suppression.  SAC ¶ 64; Opp'n at 8, 8 n.6.
Under California law, the elements of fraudulent concealment are:

> (1) the defendant concealed a material fact;
> (2) the defendant was under a duty to disclose
> the fact to the plaintiff; (3) the defendant
> concealed or suppressed the fact with an intent
> to defraud; (4) the plaintiff was unaware of
> the fact and would have acted if he or she had
> known about it; and (5) the concealment caused
> the plaintiff to sustain damage.

Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1156 n.3 (9th
Cir. 2000).

MOL identifies AGL's false positive assertion as an assertion
that the shipments originated from "Shenzhen - Door" when in fact
they did not, and AGL's concealment as its failure to disclose that
the drayage in China consisted of container yard moves rather than
shipments from inland factories.  Uncontroverted evidence strongly
suggests that the daily routing guide received by AGL from
SeaMaster does not identify the shipment's point of origin.  Briles
Dep. 47:8-20, 65:20-66:-8.  Thus, the claim of nondisclosure and
concealment must be premised on the mismatched bills of lading.

The Court observes that the fact that the bills of lading
contained a mismatch may not be enough to establish AGL's actual
knowledge of the mismatch.  AGL, after all, denies having read the
bills of lading and offers testimony that it had no reason to do
so.  Briles Dep. 68:16-69:7; Rosenberg Dep. 103:17-104:3.  MOL
suggests that constructive knowledge of the bills of ladings'

**United States District Court**
For the Northern District of California

1  contents may be imputed to AGL.[7]   However, the leading California

2  cases addressing the "exclusive knowledge" species of nondisclosure

3  appear to involve actual knowledge of the undisclosed facts, as

4  opposed to merely constructive knowledge.[8]   MOL has not cited any

5  case standing for the proposition that a party has a duty to

6  disclose facts of which it has only constructive knowledge.

7  Neither does MOL say how constructive knowledge could satisfy

8  California law's requirement that the defendant know the

9  materiality of the omitted fact.  See Goodman, 18 Cal. 3d at 347.

10       MOL comes closer to the mark when it cites regulations

11  promulgated by the Federal Maritime Commission to implement

12  provisions of the Shipping Act.  See Opp'n at 5-6.  As MOL notes,

13  these regulations provide, in pertinent part:

14              (e)   False   or   fraudulent   claims,   false
              information. No licensee shall prepare or file
15              or assist in the preparation or filing of any
              claim, affidavit, letter of indemnity, or other
16              paper   or   document   concerning   an   ocean
              transportation intermediary transaction which
17              it  has  reason  to  believe  is  false  or
              fraudulent,  nor  shall  any  such  licensee
18              knowingly  impart  to  a  principal,  shipper,
              common  carrier  or  other  person,  false
19              information   relative   to   any   ocean
              transportation intermediary transaction.

20

21  [7] See Opp'n at 9-10 (stating that "accurate information reflecting
    both the origin and destination of each shipment was contained in
22  the NVOCC house bill of lading" and concluding that "AGL clearly
    knew that the 'Shenzhen door' place of receipt reflected in MOL's
23  bill of lading was false"); see also id. at 16-18 (arguing, in the
    context of MOL's negligent misrepresentation claim, that AGL had
24  constructive knowledge of the contents of the bills of lading).

25  [8] See De Spirito v. Andrews, 151 Cal. App. 2d 126, 130-31 (Cal. Ct.
    App. 1957); Lingsch v. Savage, 213 Cal. App. 2d 729, 735-37 (Cal.
26  Ct. App. 1963); Massei v. Lettunich, 248 Cal. App. 2d 68, 72-73
    (Cal. Ct. App. 1967); Goodman v. Kennedy, 18 Cal. 3d 335, 347-48
27  (Cal. 1976); Wells v. John Hancock Mut. Life Ins. Co., 85 Cal. App.
    3d 66, 70-73 (Cal. Ct. App. 1978); Magpali v. Farmers Group, Inc.,
28  47 Cal. App. 4th 1024, 482 (Cal. Ct. App. 1996); see also 5 Witkin,
    Summary 10th (2005) Torts § 796.

11

**United States District Court**
For the Northern District of California

> (f) Errors and omissions of the principal or shipper. A licensee who has <u>reason to believe</u> that its principal or shipper has not, with respect to a shipment to be handled by such licensee, complied with the laws of the United States, or has made any error or misrepresentation in, or omission from, any export declaration, <u>bill of lading</u>, affidavit, or other document which the principal or shipper executes in connection with such shipment, shall advise its principal or shipper promptly of the suspected noncompliance, error, misrepresentation or omission, and shall decline to participate in any transaction involving such document until the matter is properly and lawfully resolved.

46 C.F.R. § 515.31(e)-(f) (emphases added). These regulations put licensees like AGL under an affirmative obligation to refrain from preparing documents containing false information (provided the licensee has reason to believe it is false) and refrain from imparting false information (provided that is done knowingly), as well as to point out errors, misrepresentations, or omissions in, inter alia, bills of lading (provided the licensee has reason to believe the document contains such inaccuracies). AGL's response appears to be that it did not know, and had no reason to know, of any falsities or omissions in the bills of lading. However, that position rests on Briles and Rosenberg's denials that AGL read or knew the contents of the bills of lading. As explained above, the Court cannot credit those denials without impermissibly making a credibility determination.

The parties raise a number of other, ancillary arguments and matters in connection with this claim, but the Court need not address them.[9] AGL's motion for summary judgment on this claim is

---

[9] Among the ancillary matters raised by the parties is an arbitration award first discussed by MOL in its opposition, and further discussed by AGL in its reply. MOL objected to AGL's

**United States District Court**
For the Northern District of California

1   ultimately premised on the credibility of Briles and Rosenberg's

2   denials and, because the Court cannot rely on credibility

3   determinations to enter summary judgment, the Court DENIES AGL's

4   motion for partial summary judgment as to MOL's claim for

5   intentional misrepresentation in connection with the Shenzhen

6   trucking arrangement.

7       **2.   Negligent Misrepresentation**

8       Negligent misrepresentation differs from fraud in that it

9   "does not require scienter or intent to defraud." <u>See</u> <u>Small v.</u>

10  <u>Fritz Companies, Inc.</u>, 30 Cal. 4th 167, 173-74 (Cal. 2003) (quoting

11  <u>Gagne v. Bertran</u>, 43 Cal. 2d 481, 487-488 (Cal. 1954)).  Negligent

12  misrepresentation

13          encompasses "[t]he assertion, as a fact, of
    that which is not true, by one who has no

14          reasonable ground for believing it to be true"
    and "[t]he positive assertion, in a manner not

15          warranted by the information of the person
    making it, of that which is not true, though he

16          believes it to be true."

17  <u>Id.</u> at 174 (quoting Cal. Civ. Code §§ 1710(2), 1572(2))

18  (alterations in original; citations omitted).  In California,

19  negligent misrepresentation further differs from intentional

20  misrepresentation in that, while certain nondisclosures may support

21  a claim for intentional misrepresentation, a negligent

22  misrepresentation claim requires a "positive assertion," and hence

23  "omissions" -- that is, nondisclosures -- cannot give rise to

24  liability for negligent misrepresentation.  <u>Lopez v. Nissan N. Am.,</u>

---

25  discussion of the arbitration award on the ground that AGL should

26  not be permitted to raise new arguments on reply.  ECF No. 151.
    AGL filed a response to the objection.  ECF No. 162.  Because the
    Court disposes of the instant motion without needing to refer to

27  the matters that are subject of MOL's objection (matters that the
    Court finds largely irrelevant), the objection is moot and hence

28  OVERRULED.

**United States District Court**
For the Northern District of California

1 Inc., 201 Cal. App. 4th 572, 596 (Cal. Ct. App. 2011), reh'g denied

2 (Dec. 30, 2011), review withdrawn (Mar. 14, 2012); Wilson v.

3 Century 21 Great W. Realty, 15 Cal. App. 4th 298, 306 (Cal. Ct.

4 App. 1993).  This difference makes an admittedly counterintuitive

5 result possible under California law: The same failure to disclose

6 may support a claim for intentional misrepresentation but not

7 negligent misrepresentation.[10]

8         In the case at bar, MOL argues that language in MOL's bill of

9 lading and waybills resulted in AGL's being liable in tort for the

10 truth of the information contained in those bills of lading.  The

11 argument relies on three provisions in MOL's combined transport

12 bill of lading.  First, the bill of lading defines "Merchant" to

13 include the "Consignee" of goods shipped under that bill.  Minck

14 Decl. ¶ 9, Ex. A at 1.  There is no dispute that AGL was listed as

15 the consignee and notify party on many of the shipments implicated

16 in the Shenzhen trucking arrangement.  Second, the bill of lading

17 states that that "[a]ll of the [p]ersons coming within the

18 definition of Merchant . . . shall be jointly and severally liable

19 to the Carrier for the due fulfillment of all obligations of the

20 Merchant in this Bill of Lading."  Minck Decl. ¶ 9, Ex. A at 6.

21 Third, the bill of lading states that the "Merchant warrants to the

22 Carrier [i.e., to MOL] that the particulars relating to the Goods

23 as set out overleaf have been checked by the Merchant on this Bill

24 of Lading and that such particulars and any other particulars

25

26 [10] Cf. Lopez, 201 Cal. App. 4th at 596 (noting that claim for
negligent misrepresentation cannot be based on an omission, but
27 claim for intentional misrepresentation can); Oakland Raiders v.
Oakland-Alameda Cnty. Coliseum, Inc., 144 Cal. App. 4th 1175, 1184
28 (Cal. Ct. App. 2006) (torts of intentional and negligent
misrepresentation are "separate and distinct").

furnished by or on behalf of the Shipper are accurate and correct." Minck Decl. ¶ 9, Ex. A at 6-7.  In summary, the bill of lading purports to impose joint and several liability on non-shippers like AGL for representations made by shippers like SeaMaster.  MOL asks the Court to conclude that this language makes AGL responsible for the false "positive assertions" of fact that made their way into the master bills of lading.

MOL cites a number of cases addressing the binding effect of bills of lading on consignees like AGL, Opp'n at 5 n.4, but the Court finds them inapplicable to the matter of tort liability.  The cases speak to different legal issues than the one presented here, for instance, whether language like that contained in MOL's waybills can support joint and several liability for unpaid freight charges, whether the shipping rates set forth in tariffs are enforceable in contract, or whether the terms in a short-form bill of lading may incorporate the terms of a long-form bill of lading. That is, all of the cases address points of contract law.  The Court finds no support in those cases, however, for the proposition that the language in MOL's bill of lading can result in joint and several liability in tort.  Neither has MOL marshaled any authority to demonstrate that a failure to comply with the Federal Maritime Commission regulations discussed in the previous section can support liability in tort (assuming for the sake of argument that AGL did so fail).

In the absence of any evidence that AGL itself positively but inaccurately asserted the place of receipt for the shipments implicated in the Shenzhen trucking arrangement, California law

United States District Court
For the Northern District of California

1  entitles AGL to summary judgment on MOL's negligent

2  misrepresentation claim.[11]

3      Accordingly, AGL's motion for summary judgment is GRANTED with

4  respect to the negligent misrepresentation claim.[12]

5      **B.   Conspiracy**

6      In addition to its misrepresentation claims against AGL, MOL

7  also asserts a claim for conspiring to commit fraud.  SAC ¶¶ 68-73.

8  MOL names Seamaster and Summit in this claim, in addition to AGL.

9  Id.  Under California law, civil "[c]onspiracy is not a cause of

10 action, but a legal doctrine that imposes liability on persons who,

11 although not actually committing a tort themselves, share with the

12 immediate tortfeasors a common plan or design in its perpetration."

13 Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503,

14 510-11 (Cal. 1994).  Thus, a claim for civil conspiracy rests on

15 the "commission of an actual tort."  Id. at 511.  Assuming such a

16 tort occurs, the elements of civil conspiracy under California law

17 are: "[1] formation and operation of the conspiracy, [2] wrongful

18 act or acts done pursuant thereto, and [3] damage."  Cnty. of Marin

19 v. Deloitte Consulting LLP, 836 F. Supp. 2d 1030, 1045 (N.D. Cal.

20 2011) (citing Mosier v. S. California Physicians Ins. Exch., 63

21 Cal. App. 4th 1022, 1048 (Cal. Ct. App. 1998)).

22

23 _____

24 [11] The Court held to the contrary in Mitsui O.S.K. Lines, Ltd. v.
   Allied Transp. Sys. (USA), Inc., 10-5586 SC, 2011 WL 5861642, at
25 *5-6 (N.D. Cal. Nov. 22, 2011).  In that case, however, the moving
   party did not distinguish between intentional and negligent
   misrepresentation.

26
27 [12] In the absence of evidence of any positive assertion by AGL, the
   Court need not, and does not, reach MOL's argument that the rate
   AGL received on the shipments implicated in the Shenzhen trucking
28 arrangement should have alerted it that it was getting a deal "too
   good to be true."  See Opp'n at 18.

1   Here, AGL seeks summary judgment as to MOL's claim that it
2   conspired in the Shenzhen trucking fraud on the ground that MOL has
3   produced no evidence that AGL knew of or participated in such a
4   conspiracy.  MOL responds by citing to excerpts of the deposition
5   testimony of Jerry Huang, the SeaMaster executive.  Cicala Decl.
6   Ex. C. ("Huang Dep.") 226:4-237:11.  In his deposition, Huang
7   appeared to admit to knowledge of the Shenzhen trucking
8   arrangement.  However, although Huang discussed in his deposition
9   various interactions between Summit, Seamaster, an MOL employee
10  named Michael Yip (whom MOL claims participated in the fraudulent
11  scheme), and a trucking company called Rainbow, Huang never
12  mentioned AGL.  MOL asks the Court to read Huang's deposition
13  testimony as an admission of the existence of a conspiracy to
14  defraud MOL and then to infer from AGL's identification on bills of
15  lading as consignee and notify party that AGL knew of and
16  participated in the conspiracy.  MOL is entitled to favorable
17  reasonable inferences, but that is a leap too far.  Essentially,
18  AGL carried its initial burden of production by showing that MOL
19  lacks sufficient evidence to establish the "knowledge and
20  participation" element of its conspiracy claim.  See Nissan Fire &
21  Marine, 210 F.3d at 1102.  MOL therefore must "produce enough
22  evidence to create a genuine issue of material fact."  Id. at 1103.
23  The only evidence MOL has produced as to AGL's awareness of the
24  conspiracy is evidence which does not mention AGL at all.  At best,
25  MOL produces evidence of a conspiracy involving similarly situated,
26  but different, parties.  This mere "scintilla" of evidence is not
27  enough to avoid summary judgment.  See Anderson, 477 U.S. at 252.
28

**United States District Court**
For the Northern District of California

1    Accordingly, the Court GRANTS AGL's motion for summary

2  judgment as to MOL's claim for conspiracy to commit fraud in

3  connection with the Shenzhen trucking scheme.

4    **C.    <u>RICO</u>**

5    The civil RICO statute provides:

6        It shall be unlawful for any person employed by
         or associated with any enterprise engaged in,
7        or the activities of which affect, interstate
         or foreign commerce, to conduct or participate,
8        directly or indirectly, in the conduct of such
         enterprise's affairs through a pattern of
9        racketeering activity or collection of unlawful
         debt.
10

11  18 U.S.C. § 1962(c).  "To state a claim under § 1962(c), a

12  plaintiff must allege '(1) conduct (2) of an enterprise (3) through

13  a pattern (4) of racketeering activity.'"  <u>Odom v. Microsoft Corp.</u>,

14  486 F.3d 541, 547 (9th Cir. 2007) (quoting <u>Sedima, S.P.R.L. v.</u>

15  <u>Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985)).

16    Though the parties submit arguments pertaining to each element

17  of MOL's § 1962(c) claim, the Court concludes that it need proceed

18  no further than the first element, "conduct."  "The conduct

19  requirement under § 1962(c) means that '[i]n order to "participate,

20  directly or indirectly, in the conduct of such enterprise's

21  affairs," one must have some part in directing those affairs."

22  <u>Eclectic Properties E., LLC v. The Marcus & Millichap Co.</u>, C-09-

23  00511 RMW, 2012 WL 713289, at *6 (N.D. Cal. Mar. 5, 2012)

24  (alteration in original) (quoting <u>Reves v. Ernst & Young</u>, 507 U.S.

25  170, 179 (1993)).  Under this "operation and management" test,

26  first articulated in <u>Reves</u>, "[s]imply performing services for the

27  enterprise does not rise to the level of direction, whether one is

28  'inside' or 'outside,'" that is, part or not part of the

**United States District Court**
For the Northern District of California

1   enterprise.  <u>Walter v. Drayson</u>, 538 F.3d 1244, 1249 (9th Cir.

2   2008).

3       Here, MOL offers insufficient evidence to raise a triable

4   issue of material fact as to whether AGL had "some part in

5   directing" the enterprise.  MOL points to "the historical

6   relationship of the participants in the [alleged] fraudulent

7   activity," and submits evidence that Huang and Rosenberg, now

8   executives of SeaMaster and AGL, respectively, had business

9   dealings from 1998 to 2006, as executives of companies called Hecny

10  and Global Link, respectively.  Opp'n at 20 (citing Rosenberg Dep.

11  12:11-13:19, 14:4-8).  MOL describes AGL as having hired SeaMaster

12  in 2008 to perform substantially the same role that Hecny performed

13  for Global Link.  <u>Id.</u> at 20-21 (citing Rosenberg Dep. 43:25-44:12;

14  Pl.'s Ex. 143).[13]  MOL then describes a "parallel" enterprise

15  involving Defendants Kesco and Summit, but not AGL.  <u>Id.</u> at 21.

16  MOL notes that SeaMaster is part of the Summit group of companies.

17  <u>Id.</u>

18      None of this explains how AGL has "some part in directing" the

19  enterprise's affairs.  At most, it suggests that AGL may have been

20  part of an enterprise.  But merely being part of the enterprise is

21  not enough.  <u>See</u> <u>Walter</u>, 538 F.3d at 1249.  Even providing services

22  that benefit the enterprise is not enough.  <u>See</u> <u>Univ. of Maryland</u>

23  <u>at Baltimore v. Peat, Marwick, Main & Co.</u>, 996 F.2d 1534, 1539 (3d

24  Cir. 1993); <u>see also</u> <u>Baumer v. Pachl</u>, 8 F.3d 1341, 1345 (9th Cir.

---

25  [13] Rosenberg himself, however, did not come to work for AGL until
26  2009 and thus was not employed by AGL at the time AGL hired
    SeaMaster through Huang, as MOL itself notes.  Opp'n at 14 (citing
27  Rosenberg Dep. 41:18-25).  MOL asserts, without citing to evidence,
    that "Global Link's former management team, now operating AGL,
28  clearly continued [Global Link's] fraudulent schemes relating to
    MOL shipments."  <u>Id.</u>

**United States District Court**
For the Northern District of California

1  1993) (citing <u>Univ. of Maryland</u> with approval).  In short, even if

2  the Court assumes that AGL participated in the asserted RICO

3  enterprise, MOL offers no evidence that AGL had any part in

4  operating or managing it.  In considering what activities satisfy

5  <u>Reves</u>'s "operation and management" test, the Ninth Circuit has

6  looked at whether a party: gives or takes direction in the

7  enterprise; "occup[ies] a position in the chain of command" of the

8  enterprise; "knowingly implements decisions" of the enterprise; or

9  is "indispensable to achievement of the enterprise's goal." <u>See</u>

10  <u>Walter</u>, 538 F.3d at 1249.  MOL offers no evidence on these points.

11  MOL relies on evidence of the existence of a longstanding business

12  relationship between a principal of AGL and a principal of

13  SeaMaster.  That is not enough to establish RICO "conduct."  The

14  considerations raised in the Court's discussion of MOL's conspiracy

15  claim also apply here.  <u>See</u> Section IV.B <u>supra</u>.  MOL's evidence

16  suggests, at best, a parallel enterprise involving companies

17  similarly situated to, but different from, AGL.

18       MOL makes much of the conduct of Global Link, a now-defunct

19  entity formerly helmed by Rosenberg which is not a party to this

20  lawsuit.  <u>See</u> Opp'n at 13-14.  MOL asserts that evidence pertaining

21  to Global Link is admissible under Federal Rule of Evidence

22  404(b)(2) to show "motive, opportunity, intent, preparation, plan,

23  knowledge, identity, absence of mistake[,] or lack of accident."

24  Opp'n at 14 n.10.  Assuming without deciding that (1) the evidence

25  would be admissible for that purpose and (2) that the evidence

26  establishes that Rosenberg used Global Link to commit RICO

27  violations against MOL, it still would not show that Rosenberg or

28  AGL directed any RICO enterprise in this case.

United States District Court
For the Northern District of California

MOL cites two out-of-circuit cases for the proposition that "[i]t is not necessary to prove that every member of the enterprise participated in or knew about all of its activities."  Opp'n at 20 (internal quotation marks omitted) (citing United States v. Cagnina, 697 F.2d 915, 922 (11th Cir. 1983); United States v. Rastelli, 870 F.2d 822, 827-28 (2d Cir. 1989)).  That proposition holds in the situations where it applies, but this is not one of those situations.  The cited discussions in Cagnina dealt with the requirements for alleging the existence of an enterprise -- a separate consideration from showing "conduct" under Reves's "operation and management" test.  Rastelli addressed what the government must prove in a criminal RICO case to prove a RICO conspiracy (as compared to the non-conspiracy civil claim arising under § 1962(c)).  Neither case addresses the issue of "conduct" that is relevant here.

In conclusion, MOL has not carried its burden of showing a triable issue of material fact as to the "conduct" requirement of its § 1962(c) claim.  Accordingly, the Court GRANTS AGL's motion for partial summary judgment as to that claim.

MOL also asserts a § 1962(d) claim against, inter alia, AGL. Section 1962(d) simply proscribes conspiring to commit RICO violations and thus depends on the viability of an underlying RICO claim.  See Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000).  None being present here, AGL is entitled to summary judgment as to MOL's § 1962(d) claim.  The absence of evidence of conspiracy also supports entry of summary judgment on this claim. See Section IV.B supra.  Accordingly, the Court GRANTS AGL's motion for partial summary judgment as to MOL's § 1962(d) claim.

**V.     CONCLUSION**

For the foregoing reasons, the Court PARTIALLY GRANTS and PARTIALLY DENIES the motion of Defendant American Global Logistics, LLC for partial summary judgment.  Plaintiff Mitsui O.S.K. Lines, Ltd.'s claims for negligent misrepresentation, conspiracy to intentionally misrepresent, civil RICO violations, and civil RICO conspiracy are DISMISSED as to AGL.  Plaintiff's claim for intentional misrepresentation remains undisturbed as to AGL.

IT IS SO ORDERED.

Dated: December 19, 2012          

UNITED STATES DISTRICT JUDGE